IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| MAAN ALJIZZANI, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:22-cv-1321 (RDA/WEF) |
| MIDDLE EAST BROADCASTING NETWORKS, INC., | ) ) ) ) | |
| Defendant. | ) ) ) | |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Middle Eastern Broadcasting Networks, Inc.'s ("MBN" or "Defendant") Renewed Motion to Dismiss ("Motion") (Dkt. 28). The Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motion together with Defendant's Memorandum in Support (Dkt. 28), Plaintiff's Opposition (Dkt. 30), and Defendant's Reply (Dkt. 31), the Court GRANTS Defendant's Renewed Motion to Dismiss for the reasons that follow.

I. BACKGROUND[1]

A. Factual Background[2]

Plaintiff Maan Aljizzani ("Plaintiff") brings one count of national origin discrimination against his employer, MBN, asserting that he was discriminated against and terminated in violation of Title VII of the Civil Rights Act of 1964. Dkt. 26 ¶¶ 67-72.

Plaintiff, an Iraqi-American man, was employed as an investigative reporter by MBN, a government-funded non-profit corporation providing Arabic-language news and information on a number of platforms. Dkt. Nos. 26 ¶¶ 6, 12; 28 at 2. Throughout his employment, Plaintiff received positive work performance assessments and multiple awards for his investigative reporting. Dkt. 26 ¶¶ 21, 24. Plaintiff's direct supervisor was Hussein El-Razzaz, the Chief of MBN's Investigative Unit. *Id.* ¶ 16.

In early March of 2021, MBN gave verbal warnings to Plaintiff and four other Iraqi journalists—Maan Habib, Steven Nabil, Saad Nasser, and Omar Al-Hamdani—instructing them to abstain from posting political content about Iraq on their personal social media accounts. *Id.* ¶¶ 28-29. On March 6, 2021, Pope Francis, head of the Catholic church, met with Grand Ayatollah Ali al-Sistani in Iraq, and Plaintiff tweeted on his personal Twitter[3] account, "the owner of the

---

[1] The facts alleged in Plaintiff's Amended Complaint are largely the same as those stated in the Court's Memorandum Opinion and Order (Dkt. 17). The majority of this Background section repeats the facts set forth in this Court's prior opinion, but additional facts have also been added to reflect any new allegations in the Amended Complaint. Dkt. 17 at 2-3.

[2] For purposes of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Amended Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[3] In late July of 2023, the social media platform known at the time as Twitter rebranded itself as "X." *Cofield v. Passport Motors Holdings, Inc.*, 686 F.Supp.3d 424, 425 n.2 (D. Md. 2023). Posts made on what is now X are often still referred to as "tweets" by courts. *See e.g., Broughty v. Bouzy*, No. 22-06458, 2024 WL 1739866, at *2 n.2 (D. N.J. Apr. 22, 2024) (referring

house was an emaciated ghost, expressionless and emotionless, as if he were sitting upright in spite his aged body, amid the amazement, astonishment, and pity of his guest!" *Id.* ¶¶ 31-32. Shortly after that post, Amr El-Kahky, Vice President of Programming and Plaintiff's second-line supervisor, called Plaintiff and told him to delete the tweet. *Id.* ¶¶ 17, 33, 55. Plaintiff asked for an explanation and, after receiving none, refused to comply. *Id.* ¶ 34.

According to Plaintiff, MBN suspended him because he refused to delete the tweet. *Id.* ¶ 35. On March 9, 2021, Plaintiff met with MBN's Senior Adviser and Senior Human Resource Manager and, again, refused to delete his tweet. *Id.* ¶¶ 36-37. MBN then terminated Plaintiff, citing violations of MBN's Journalistic Code of Ethics ("Code"). Dkt. Nos. 26 ¶ 39; 26-1.

Plaintiff alleges that his termination was not based on any violation of the Code but rather on his national origin. Dkt. 26 ¶ 64. Plaintiff further claims that, while all journalists—including investigative reporters—are subject to the Code, MBN "selectively and disproportionately applies its Code to Iraqi Journalists," using it as a pretext to terminate Iraqi journalists. *Id.* ¶¶ 41-42. In support of his claims of national origin discrimination, Plaintiff alleges three groups of comparators who are similarly situated to himself. First, Plaintiff alleges that other non-Iraqi investigative reporters—Randa Jebai and Ghalia Bdewi—have not been reprimanded for regularly posting on social media or for violating MBN's Code. *Id.* ¶¶ 50-52. Plaintiff asserts that Jebai and Bdewi "had the same job responsibilities as Plaintiff," were not hired to write opinion pieces or host opinion programs, and had the same direct supervisor as Plaintiff. *Id.* ¶¶ 45-47. Second, Plaintiff identifies a reporter—Pedro Ghanem—and two news anchors—Joe Khawly and Tamara Abou Dehen—and alleges that they all frequently tweeted their political opinions without any

---

to posts made on X as tweets); *Beneficient v. Gladstone*, No. 6:23-cv-376-JDK, 2024 WL 2338256, at *3 n.1 (E.D. Tex. May 22, 2024). Accordingly, this Court too will refer to posts made on X as "tweets."

3

reprimands or alternative consequences from MBN. *Id.* ¶¶ 53, 55-56. Plaintiff alleges that Ghanem "had the same job responsibilities as Plaintiff," was supervised by Plaintiff's second-line supervisor as well as MBN's Acting President and Senior Vice President, and was hired "to host opinion programs or to write opinion pieces."[4] *Id.* ¶¶ 55, 57-58. Further, Plaintiff alleges that Khawly and Dehen "had similar job responsibilities as Plaintiff," were supervised by MBN's Acting President and Senior Vice president, and "were hired to host opinion programs or to write opinion pieces." *Id.* ¶¶ 56-58. Plaintiff also alleges that Ghanem, Khawly, and Dehen were all journalists subject to MBN's Code. *Id.* ¶ 59. Third, Plaintiff alleges that Iraqi journalists—Habib, Nabil, Nasser, and Al-Hamdani—were reprimanded for tweeting political opinions that violated MBN's Code and that MBN terminated Maan Habib and Steven Nabil in September of 2021,[5] citing violations of the Code as justification. *Id.* ¶ 63.

B. Procedural Background

On August 27, 2021, Plaintiff filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 11a. Nearly a year later, the EEOC issued

---

[4] In Plaintiff's Amended Complaint, Plaintiff asserts that "Mr. Ghanem, Mr. Khawly, and Ms. Dehen . . . were hired to host opinion programs or to write opinion pieces." Dkt. 26 ¶ 58. However, in Plaintiff's Opposition to the Renewed Motion to Dismiss, Plaintiff claims that Mr. Ghanem, Mr. Khawly, and Ms. Dehen were not hired to "host opinion programs or write opinion pieces." Dkt. 30 at 3. Defendant identifies this discrepancy in its Reply and relies solely on the facts alleged in the Amended Complaint. Dkt. 31 at 4. As Plaintiff may not amend his allegations in pleadings opposing a motion to dismiss, this Court will confine consideration to the allegations in the Amended Complaint. *See Myland Labs., Inc. v. Alzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (holding that "it is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss").

[5] While Plaintiff's Amended Complaint alleges that Mr. Habib and Mr. Nabil were terminated in September of 2021, Defendant asserts in its Memorandum in Support of its Renewed Motion to Dismiss that Mr. Habib and Mr. Nabil were terminated in September of 2022. Dkt. Nos. 26 ¶ 63; 1 ¶ 45; 28 at 13 n.7. However, at this stage of the proceedings, the Court accepts the facts alleged in the Amended Complaint as true.

a Dismissal and Notice of Right to Sue. *Id.* On November 18, 2022, Plaintiff filed his Complaint with this Court. Dkt. 1. On February 3, 2023, Defendant timely filed its Motion to Dismiss seeking to dismiss the discrimination claim for failure to state a claim. Dkt. 9. Plaintiff filed his Opposition on February 17, 2023. Dkt. 11. Defendant filed its Reply on February 21, 2023. Dkt. 12. On August 7, 2023, this Court issued its Memorandum Opinion and Order granting Defendant's Motion Dismiss and finding that Plaintiff had failed to state a claim. Dkt. 17.

Following the issuance of this Court's Memorandum Opinion and Order, Plaintiff's Motion for Leave to Amend was granted, and Plaintiff's Amended Complaint was entered on the docket on October 10, 2023. Dkt. 26. On October 24, 2023, Defendant filed its Renewed Motion to Dismiss and Memorandum in Support. Dkt. 28. Plaintiff filed his Opposition to the Renewed Motion to Dismiss on November 7, 2023, and on November 13, 2023, Defendant filed its Reply. Dkt. Nos. 30, 31.

## II. STANDARD OF REVIEW

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Hall v. Burney*, 454 F. App'x 149, 150 (4th Cir. 2011) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). To survive, a complaint must "allege[] sufficient facts to 'raise a right to relief above the speculative level' and 'to state a claim to relief that is plausible on its face.'" *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

At the motion-to-dismiss stage, a plaintiff need not prove his claim but merely allege sufficient facts that support a claim for relief. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d

761, 765 (4th Cir. 2003). A plaintiff's well-pleaded facts are accepted as true and construed in the light most favorable to him. *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015). In Title VII cases, a plaintiff "is not required to plead facts that constitute a prima facie case." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). Still, a plaintiff must meet "the ordinary rules for assessing sufficiency." *Holloway v. Maryland*, 32 F.4th 293, 298-99 (4th Cir. 2022) (citing *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015)). Additionally, "the [C]ourt 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (quoting *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 559, 616 n.26 (4th Cir. 2009)) (alterations in original).

## III. ANALYSIS

Plaintiff's Amended Complaint alleges that he was discriminated against based on his national origin in violation of Title VII. Defendant argues that Plaintiff's claim fails because, like in his initial Complaint, Plaintiff does not allege direct evidence of discrimination and does not allege facts that sufficiently support an inference that his termination was based on national origin discrimination. Plaintiff concedes that he has not alleged any direct evidence of discrimination. Instead, Plaintiff asserts that he is "proceeding under the burden-shifting framework set forth in *McDonnell Douglas*." Dkt. 30 at 2. Therefore, the Court will rely on the *McDonnell Douglas* framework to assess Plaintiff's national origin discrimination claim.

If a plaintiff does not allege direct evidence of discrimination, he can state his claim using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *Laing v. Fed. Exp. Corp.,* 703 F.3d 713, 717 (4th Cir. 2013). A plaintiff's

complaint does not need to establish a *prima facie* case, but it must still meet the *Iqbal* and *Twombly* pleading standards. *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017). Here, however, Plaintiff has elected to establish an inference of discrimination by attempting to establish a *prima facie* case based on his alleged different treatment from similarly situated comparators.

To state a *prima facie* case under the *McDonnell Douglas* framework, a plaintiff must allege: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) different treatment from similarly situated comparators outside of the plaintiff's protected class. *Thweatt v. Prince George Cnty. Sch. Bd.,* No. 3:21CV258-HEH, 2021 WL 4046404, at *3 (E.D. Va. Sept. 3, 2021); *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). In its Motion, Defendant does not dispute that Plaintiff has alleged facts that plausibly satisfy the first three[6] prongs of the analysis. Dkt. 28 at 4-5. However, Defendant contends that Plaintiff has not sufficiently pleaded facts to satisfy the fourth element—that he was treated differently from comparators outside of his protected class. *Id.* Accordingly, the Court's analysis will focus on whether Plaintiff has sufficiently alleged similarly situated employees or comparators.

Although a plaintiff is not required to identify a comparator to prove a discrimination claim, if he relies on comparator evidence to make his claim, he must show that the alleged comparators are sufficiently similar to himself. *Swaso v. Onslow Cnty. Bd. Of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017) (citing *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008)).

---

[6] In Defendant's Reply, Defendant insinuates that Plaintiff's job performance was unsatisfactory under the second prong of the *McDonnell Douglas* framework because he refused to delete his tweet after he was instructed to do so by his supervisor, amounting to insubordination. Dkt. 31 at 4 n.3. Defendant acknowledges, however, that it "has not directly argued that Plaintiff has failed the second prong of the *McDonnell Douglas* framework." *Id.* Accordingly, the Court need not address this aspect of Defendant's argument. Dkt. 17 at 7.

The similarly situated element requires Plaintiff to allege "that the proposed comparators are not just similar in some respects, but 'similarly-situated in all respects.'" *Spencer v. Va. State Univ.*, 919 F.3d 199, 207-08 (4th Cir. 2019) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). Factors rendering comparators similar include whether they "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223-24 (4th Cir. 2019) (quoting *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010)) (alterations in original).

Plaintiff alleges that three different sets of individuals are similarly situated comparators such that he has satisfied the fourth element of the *McDonnell Douglas* framework. The Court will address each alleged set of comparators in turn.

### A. Non-Iraqi Investigative Reporters

First, Plaintiff asserts that two other non-Iraqi investigative reporters—Jebai and Bdewi—are similarly situated comparators. Dkt. 26 ¶ 44. Plaintiff alleges that Jebai and Bdewi have the same direct supervisor. *Id.* ¶ 47. But, Plaintiff only alleges generally that they "had the same job responsibilities as Plaintiff," without additional facts to support this assertion. *Id.* ¶ 45. Furthermore, Plaintiff alleges that Jebai and Bdewi were subject to MBN's Code as journalists, that the two "regularly posted on social media," and that the two never "received reprimands for *violating* MBN's Code." *Id.* ¶ 49-51 (emphasis added). Yet, Plaintiff fails to allege that Jebai and Bdewi's social media posts actually violated MBN's Code.[7] According to MBN's Code, only

---

[7] In his Opposition, Plaintiff asserts that he has included the allegedly violative tweets from his comparators. Dkt. 30 at 6. This is incorrect. The allegedly violative tweets are neither included in the text of the Amended Complaint nor are they attached to the Amended Complaint. Plaintiff similarly fails to include the allegedly violative tweets made by his alleged comparators in his

8

"inflammatory or otherwise inappropriate" posts are prohibited. Dkt. 26-1 at 6. Plaintiff does not allege that either Jebai or Bdewi posted an inflammatory or inappropriate post on social media such that they should have been reprimanded. *See Lightner*, 545 F.3d at 265 ("The similarity between comparators and the seriousness of their respective offense must be clearly established in order to be meaningful."). Here, the Court is forced to speculate as to the content of Jebai's and Bdewi's regular postings on social media and whether they were a violation of MBN's Code; therefore, Plaintiff has failed to meet his burden under *Twombly* and *Iqbal*. *Cf. See Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 580 (W.D. Va. 2021) ("Scarborough argues in her opposition that she has been treated differently from other parents because they were not blocked on Facebook . . . . But Scarborough would have needed to allege that she was treated differently from other parents who had also posted critical comments on the FCPS Facebook page."). Thus, the facts alleged do not support a reasonable inference that Jebai and Bdewi engaged in the same conduct as Plaintiff. Accordingly, Plaintiff has failed to plausibly allege that Jebai and Bdewi are similarly situated employees.

### B. Other non-Iraqi Reporter and Newscasters

Next, Plaintiff asserts that he sufficiently alleged that other non-Iraqi journalists—Ghanem, Khawly, and Dehen—are comparators. Dkt. 26 ¶ 54. These allegations with respect to this class of alleged comparators are also insufficient. First, Plaintiff alleges that Ghanem is a "reporter" with the "same responsibilities as Plaintiff," *id.* ¶ 55, and that Khawly and Dehen are "news anchors" with "similar job responsibilities as Plaintiff," *id.* ¶ 56. Without further factual allegations, the Court is again required to speculate that the responsibilities of a reporter and a

---

Opposition or as an attachment to his Opposition. Accordingly, the Court has not been provided with these tweets and thus cannot compare those tweets to Plaintiff's own tweet.

news anchor are sufficiently similar to that of Plaintiff, who was an investigative reporter. *C.f. Spencer*, 919 F.3d at 204 (noting, in the context of an Equal Pay Act claim, that plaintiffs may not rely on broad generalizations of job responsibilities to allege comparators). Mere allegations that the responsibilities of these other employees are "the same" or "similar" to Plaintiff's alone are insufficient to support an inference that Ghanem, Khawly, and Dehen had the same job responsibilities as Plaintiff.

Further, Plaintiff alleges that Ghanem, Khawly, and Dehen "were hired to host opinion programs or to write opinion pieces." Dkt. 26. ¶ 58. Yet, critically, Plaintiff asserts that he was *not* hired to write opinion pieces or host opinion programs. Dkt. 30 at 3 (emphasis added). Thus, Plaintiff's own allegations establish that Ghanem, Khawly, and Dehen were not similarly situated to Plaintiff. Indeed, a reasonable person would assume that there is a significant distinction between the responsibilities and conduct of someone who is hired to issue opinion-related pieces and someone not hired to do so. Therefore, the Court cannot find that Plaintiff, Ghanem, Khawly, and Dehen were "subject to the same standards and . . . engaged in the same conduct without differentiating or mitigating circumstances that would distinguish their conduct . . . ." *Haynes*, 922 F.3d at 223-24.

Moreover, Plaintiff fails to allege that Ghanem, Khawly, and Dehen engaged in behavior similar to Plaintiff's tweet without being reprimanded. Plaintiff alleges that Ghanem, Khawly, and Dehen are all subject to MBN's Code, and that these alleged comparators often tweeted political opinions that "should constitute violations" of the Code. Dkt. 26 ¶¶ 59-60. Plaintiff further alleges that these unspecified tweets remain posted to the employee's accounts, and that these employees remain employed by MBN. *Id.* ¶ 61. Plaintiff has not, however, provided the Court with the content of the tweets at issue or explained how Ghanem's, Khawly's, or Dehen's tweets violated

10

MBN's Code. Instead, Plaintiff vaguely asserts that this class of alleged comparators tweeted political opinions that *should* constitute violations of MBN's Code without alleging what these tweets said or what provision of the Code was violated. *Id.* ¶ 60. Accordingly, these vague and conclusory allegations are insufficient for the Court to infer that Plaintiff and these comparators acted similarly. *Swaso*, 698 F. App'x at 749.

Plaintiff's allegations that Ghanem, Khawly, and Dehen shared supervisors with Plaintiff face a similar fate. Plaintiff has failed to assert that Ghanem, Khawly, and Dehen shared a direct supervisor with Plaintiff and instead alleges only that Ghanem, Khawly, and Dehen ultimately were subject to supervision by MBN's Active President and Senior Vice President. Dkt. 26 ¶ 57. From this analytical perspective, nearly every other employee of MBN would likewise be subject to the Active President and Senior Vice President given MBN's corporate structure. Plaintiff specifically alleges that his direct supervisor was El-Razzaz but does not allege that El-Razzaz also supervised Ghanem, Khawly, and Dehen. *Id.* ¶ 16. Accordingly, Plaintiff has failed to plausibly allege that Ghanem, Khawly, and Dehen are similarly situated employees. *See Bagwell v. Downtown P'ship of Balt., Inc.*, No. 18-1786, 2020 WL 247293, at *9 (D. Md. Jan. 15, 2020) (reasoning that another employee cannot be a comparator to plaintiff because they both report to the CEO of the organization).

### C. Fellow Iraqi Journalists

Finally, Plaintiff's third class of comparators also fails. Plaintiff alleges that other Iraqi Journalists—Habib, Nabil, Nasser, and Al-Hamdani—received verbal reprimands in early March 2021 based on their social media posts. Dkt. 26 ¶ 62. Plaintiff further alleges Habib and Nabil were terminated for violating MBN's Code in September 2021. *Id.* ¶ 63. These Iraqi Journalists cannot serve as valid comparators simply because they share the same protected characteristic as

Plaintiff – their shared national origin. *See Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 719-20 (4th Cir. 2013) (noting that comparators must necessarily not share the protected characteristic). But, even if this group of Iraqi journalists *could* serve as valid comparators for Plaintiff, they are not similarly situated. Plaintiff admits that he was terminated after refusing to delete a tweet that his supervisors instructed him to delete. Dkt. 26 ¶¶ 33-34, 36-38. However, Plaintiff does not allege that the other Iraqi Journalists were similarly terminated for refusing to comply with their supervisors' instruction. *Id.* at ¶ 63. Thus, even based on Plaintiff's own allegations, the other Iraqi Journalists were not similarly situated.

Plaintiff further alleges that there was a "discriminatory atmosphere at MBN against Iraqi Journalists," Dkt. 26 ¶ 65, but without additional facts, Plaintiff's argument is unavailing. Indeed, Plaintiff's allegation in this regard is atmospheric itself, in that it is vague, conclusory, and unsupported by concrete factual allegations. Thus, to the extent Plaintiff attempts to rely on this allegation to support an inference of discrimination, his argument fails.

\*   \*   \*

Ultimately, Plaintiff has failed to plausibly allege national origin discrimination because he has not adequately alleged facts that he was treated differently than similarly situated employees outside of his protected class. The Amended Complaint will therefore be dismissed. Moreover, this Court has already granted Plaintiff the opportunity to remedy the inadequacies of his original complaint and, though Plaintiff has alleged additional facts, they are still insufficient to support his claim. As such, the Court finds that further amendment would be futile, and the Court will not permit Plaintiff to further amend his complaint. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (finding that "leave to amend a pleading should be denied only when the amendment . . . would have been futile").

## IV. CONCLUSION

Accordingly, it is hereby ORDERED that Defendant's Renewed Motion to Dismiss Plaintiff's Complaint (Dkt. 28) is GRANTED; and it is

FURTHER ORDERED that Plaintiff's Amended Complaint is DISMISSED WITH PREJUDICE.

It is SO ORDERED.

Alexandria, Virginia
June 20, 2024

/s/
Rossie D. Alston, Jr.
United States District Judge